

## NUMBER 13-16-00696-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

SANDY PEREZ HERNANDEZ, Appellant,

v.

THE STATE OF TEXAS, Appellee.

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION
### Before Chief Justice Contreras and Justices Benavides and Hinojosa
### Memorandum Opinion by Justice Benavides

Appellant Sandy Hernandez was convicted of one count of manslaughter, a second-degree felony, and one count of injury to a child, a first-degree felony. *See* TEX. PENAL CODE ANN. §§ 19.04, 22.04(e) (West, Westlaw through 1st C.S. 2017). She challenges her conviction by what we construe to be thirty-one issues and subparts. Hernandez complains on the following general grounds: double jeopardy, sufficiency of

the evidence, error in the jury charge, admission of expert testimony, jury unanimity, ineffective assistance of counsel, and denial of her motion for new trial.   We affirm.

## I.     BACKGROUND

### A.     Events of October 17, 2014

Hernandez gave birth to a full-term baby boy at home in Weslaco in the early morning hours of October 17, 2014.   She was a twenty-two-year old college student who lived with her parents and siblings.

Hernandez explained the events of the morning to hospital staff as recorded in her medical records.   She felt fine until about two a.m. when she developed diarrhea.   She went to the bathroom several times and was "in and out of sleep."   She thought she was going to have a bowel movement in bed but instead delivered an eight-pound baby.   She got up with the baby and went to the kitchen to find scissors to cut the umbilical cord.   Hernandez explained that she went outside so she would not make a mess.[1]   After she cut the cord, she felt the placenta come out, and she saw a lot of blood.   Hernandez described wrapping the baby in a towel[2] and leaving the baby in the yard before crawling back to the house to ask for help.   Hernandez did not know she was pregnant, denied weight change, and stated she had menstrual spotting in August.

At trial, Hernandez's mother Virginia Hernandez testified that she awakened sometime before 6:00 a.m. when she heard a "faraway cry, 'mom'" and she found her daughter in the dining room.   Hernandez was on the floor with "a lot of blood around her."

---

[1] Later that morning, Hernandez told Sheriff's deputy Joe Black that she went outside to set off the car alarm to wake her parents.

[2] No testimony explains where Hernandez got the towel in which she wrapped the baby.

2

According to Virginia, Hernandez kept saying, "my baby, my baby." Virginia woke her husband and instructed him to call 911, explaining that "Sandy had a miscarriage." Virginia testified that Hernandez began getting hysterical and then went limp. Virginia had not known her daughter was pregnant. Virginia further testified that Hernandez told her that she slipped and fell with the baby on the tile floor before Virginia found her.

Virginia testified that she and her husband sleep with their door closed and locked. They also use room air conditioners in the bedrooms that are noisy. Virginia testified that Sandy had a boyfriend named Joel Jimenez.

Hernandez's father Lionel Hernandez testified at trial that he called 911 and then went outside to open the gate to the property. He noticed a "trail of blood" on the driveway and carport but did not follow it. After the paramedics arrived, he and Lieutenant Efrain Bautista followed the blood and found the baby in the yard.

At trial, Sally Hernandez, Hernandez's older sister, testified that she was awakened by Virginia's voice early that morning. Sally also testified that she sleeps with her bedroom door closed and locked. When Sally came out of her room, she saw Virginia trying to pull Hernandez up onto a dining room chair. Hernandez was very pale, and Sally thought she was dying because of her paleness and the blood around her. Sally heard Hernandez saying, "my baby, my baby" and did not understand what she meant. Sally testified that Hernandez told her she slipped and fell with the baby in the house and also fell with the baby outside.

Sally further testified that she arrived at the hospital a couple of hours after Hernandez. Sally described Hernandez as "wailing, crying . . . very filled with complete

3

sadness. Just crying and crying and crying." Sally testified that Hernandez told her that she named the baby Julian Lionel Jimenez.

The paramedics, Lt. Bautista and Florentino Vela, testified at trial. According to Lt. Bautista's testimony, he arrived first; Lionel directed him into the house to see Hernandez. Lt. Bautista began to attend to Hernandez and asked about the baby, but she did not respond. Lt. Bautista explained that about five minutes after he arrived, Lionel told him the baby was outside and took him to find the baby. It was dark, and they used Lt. Bautista's flashlight. Lt. Bautista saw the baby who appeared to be full term lying in the grass next to a towel. The baby was cold to the touch and barely breathing. The baby had some swelling on the side of his head. Lt. Bautista picked the baby up, took him to the ambulance, took vital signs, and started to warm the baby. He also called for another ambulance.

Florentino Vela, Lt. Bautista's partner, took over Hernandez's care. He noticed the blood on and around her and wanted to transport her to deal with the blood loss. Vela asked her what happened and in part of her response, she said "I didn't know I was pregnant. I didn't know." Vela was also concerned about her mental status; he had the impression "that she was not all there . . . she wasn't acting completely the way a normal person that just delivered a baby would have acted."

Deputy Joe Black with the Hidalgo County Sheriff's Department (HCSO) testified at trial that he interviewed Hernandez at the hospital. She was in a hospital room when Deputy Black spoke to her and she seemed "calm and sad." Hernandez told him she did not know she was pregnant, that her last menstrual period was in mid-August, and

4

that Joel Jimenez was her boyfriend and the father of her child. Hernandez also told Deputy Black that she picked up Joel from work around midnight, took him home to Mercedes, and then went back to her house. After Hernandez got home, she did not feel well and was having stomach pain. She told Deputy Black that she had the baby around 4:30 that morning. Afterwards, she got scissors to cut the umbilical cord, and then she went outside to set off the alarm on the car to alert her parents that she needed help. Hernandez told Deputy Black that once she got outside, she realized she did not have her keys, so she needed to go back inside. She collapsed with her son outside, then wrapped him in a towel, left the baby on the lawn, and went in to tell her parents. Hernandez explained that she was dizzy and might not have been able to open the door with the baby in her arms. She described collapsing again when she got inside and that woke her parents. Hernandez seemed worried about her son and told Deputy Black she did not intend to hurt him.

Jennifer Almonte Gonzalez, M.D., the obstetrician and gynecologist on call, testified at trial that she treated Hernandez at the hospital. Hernandez was in good physical condition except for a midline perineal laceration that Dr. Hernandez repaired under local anesthesia. The tear is a very common result of giving birth. Dr. Gonzalez testified that she has delivered thousands of babies in normal vaginal births and none has ever had a skull fracture. Hernandez did not tell Dr. Gonzalez that she fell or that she injured the baby by falling. Hernandez's doctors ordered a mental health evaluation that she refused. She checked out of the hospital against medical advice at approximately 3 p.m. the next day.

5

**B.   Baby Hernandez**

Baby Hernandez was admitted to the hospital at 7:26 a.m. on October 17, 2014. He died at approximately 8:00 p.m. that day.

Norma Jean Farley, M.D., a board-certified forensic pathologist who contracts with Hidalgo County, performed the autopsy on Baby Hernandez. Dr. Farley described the baby as a "term newborn infant." According to Dr. Farley, Baby Hernandez or Julian Jimenez's cause of death was blunt force head trauma.

Dr. Farley described the infant's condition during the autopsy. His right eye, especially the lower eyelid, had a "dark purple contusion with a little scrape on it . . . [and] little bits of a bruise on the lateral part of the upper eyelid." There was also a contusion "extending all the way down to [the right] side of the face going into the scalp." The bruising went back behind the ear, included the ear, down to the neck and back up to the face. There was a large area of bruising along the back of the neck into the occipital scalp that was blue to maroon. There were multiple areas of bruising on both sides of the back of the infant, but larger on the left side. On internal examination, Dr. Farley noted a thick hematoma or hemorrhage within the scalp, between the scalp and the thin membrane on top of the skull. Baby Hernandez's brain was swollen due to his injuries. In addition to swelling caused by his injuries, Dr. Farley explained that swelling may have occurred because the baby did not get enough oxygen after birth, had low blood pressure, and went into cardiac arrest.

Baby Hernandez had multiple skull fractures, including some that went entirely through the bone. Once Dr. Farley opened the skull to get to the brain, she saw blood

in almost the "whole cerebral hemisphere." The infant had retinal hemorrhages as well as optic nerve injury.

The infant also had fractures of the fifth, sixth, and seventh posterior ribs on the left side. Dr. Farley opined that all of the baby's injuries could not have been caused by a single trauma because there were different sets of contusions which led her to conclude there were two impact sites in addition to the rib fractures on the baby's back.

Dr. Farley testified that the trauma she observed could not have occurred as a result of a difficult childbirth. In Dr. Farley's experience and from her research, a fall onto grass likewise could not have caused these injuries; short falls ordinarily do not kill babies.[3] In her opinion, the injuries to Baby Hernandez required a "great amount" of inflicted force, "either a slam" or a "forceful beating on to the head" could cause the injuries. The skull of an infant is pliable, and as a result, according to Dr. Farley, that pliability limits the number of infant skull fractures even with significant force that causes death.

Carlos Alberto Mattioli, M.D. testified for the defense. He is a clinical and anatomical pathologist and was recently Director of Laboratories at Mission Regional Hospital. On average, Dr. Mattioli performed three to five autopsies a year, but likely only ten on infants during his fifty-year career. Dr. Mattioli testified that even a short fall can cause a fatal skull fracture to an infant. He concluded that the cause of the blunt force trauma was an accidental fall.

---

[3] Dr. Farley testified that she has performed more than 3,500 autopsies since 1999 and has studied child fatalities since 2003, as evidenced by multiple papers and presentations, including studies of injuries in child abuse victims since 2000.

**C.    Hernandez's Knowledge That She Was Pregnant**

Hernandez had a positive pregnancy test at her university's student health center on February 10, 2014 according to university health center records.   Hernandez's mother Virginia testified at trial that Hernandez passed a large blood clot in late February or early March 2014 that she and Hernandez believed was a miscarriage.   Hernandez did not seek follow-up medical care to determine whether she was still pregnant.   Virginia testified that she did not know Hernandez was pregnant before the apparent miscarriage.

Virginia purchased Hernandez and her sister's tampons and other feminine hygiene products and kept them in her bathroom.   She continued to purchase the products and noticed the same usage of those products that entire year.   According to her testimony, Hernandez did not appear to gain weight, and she did not appear to be pregnant in October 2014.

In July 2014, Hernandez took a trip to New Mexico with her father and brother. Lionel testified that during the trip he did not observe anything that suggested to him that Hernandez was pregnant.   The evidence includes two photographs of Hernandez taken during the trip in which she does not appear to be pregnant.

Sally testified that she met Hernandez's boyfriend, Jimenez, several times before October 2014.   Hernandez never told her sister that she was pregnant.   According to Sally, she and Hernandez went swimming in early September.   Hernandez wore a two-piece swimsuit and "there was no sign . . . of her being pregnant."

Joel Julian Jimenez, the baby's father, testified that he saw Hernandez regularly in 2014 and was not aware that she was pregnant either in February 2014 or in October

8

2014.   Although she had gained a little weight, he saw no indication that she was pregnant.   They went to the beach in late August 2014.   Hernandez wore a bikini but did not have any visible baby bump.   He continued to have sexual relations with Hernandez through October 2014 and saw no indication that she was pregnant.

**D.      Conviction and Punishment**

Hernandez was indicted for capital murder, a capital felony, in count one and with intentional or knowing injury to a child in count two.   *See id.* §§ 19.02, 22.04.   Although Hernandez was charged with capital murder, the trial court's charge to the jury also submitted the lesser-included offenses of manslaughter and criminally negligent homicide, a third-degree felony.   *See id.* §§ 19.02, 19.03, 19.04, 19.05 (West, Westlaw through 2017 1st C.S.).   On count two, the trial court submitted injury to a child committed intentionally or knowingly, and also the lesser-included offenses of injury to a child committed recklessly, or with criminal negligence.   *Id.* § 22.04(a)(1).   Injury to a child committed intentionally or knowingly is a first-degree felony; if committed recklessly, it is a second-degree felony; and if committed with criminal negligence it is a state jail felony. *Id.* § 22.04(e), (g).   The jury found Hernandez guilty of manslaughter on count one and intentional injury to a child on count two.

After a punishment hearing, the jury assessed punishment of imprisonment of twenty years on count one and thirty-two years on count two in the Texas Department of Criminal Justice–Institutional Division.   The trial court rendered judgment based upon the jury's verdicts for guilt and punishment and ordered the sentences to run concurrently.

9

**E.      Post-Trial Motions**

Hernandez filed a motion for new trial on two grounds: 1) ineffective assistance of counsel on multiple bases and 2) double jeopardy.    The trial court denied the motion by written order after a hearing.    This appeal ensued.

## II.    DOUBLE JEOPARDY

By issue one, Hernandez argues that her convictions for both manslaughter and injury to a child violate the prohibition of double jeopardy because both convictions punish the same conduct.    U.S. CONST. amend. V.    "The Fifth Amendment guarantee against double jeopardy protects against: (1) a second prosecution for the same offense following conviction; (2) a second prosecution for the same offense following acquittal; and (3) multiple punishments for the same offense."    *Illinois v. Vitale*, 447 U.S. 410, 415 (1980). The issue here is multiple punishments for the same crime.

**A.      Applicable Law**

Whether a defendant is exposed to double jeopardy is a question of law that we review de novo.    *See United States v. Njoku*, 737 F.3d 55, 68 (5th Cir. 2013)*; Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014) ("Statutory construction is a question of law, and we review the lower court's interpretation of a statute de novo."); *State v. Donaldson*, 557 S.W.3d 33, 40 (Tex. App.—Austin 2017, no pet.); *see also Minor v. State*, No. 13–14–00161–CR , 2015 WL 4523812, *2 (Tex. App.—Corpus Christi June 25, 2015, pet. ref'd) (mem. op., not designated for publication).

"Cumulative punishment may be imposed where separate offenses occur in the same transaction, as long as each conviction requires proof of an additional element that

10

the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Albrecht v. United* State, 273 U.S. 1, 11 (1927) (rejecting double jeopardy argument and affirming separate convictions for sale and possession of liquor); *see also Bien v. State*, 550 S.W.3d 180, 185 (Tex. Crim. App. 2018); *Littrell v.* State, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008); *Ex parte Ervin*, 991 S.W.2d 804, 806–07 (Tex. Crim. App. 1999).

"[I]f the two offenses, as pleaded, have different elements under the *Blockburger* test, the judicial presumption is that the offenses are different for double-jeopardy purposes and multiple punishments may be imposed." *Id.* But if the elements are the same, the presumption that offenses are the same may be rebutted by "clearly expressed legislative intent to create two separate offenses." *Bien*, 550 S.W.3d at 184.

"When a legislature specifically authorizes multiple punishments under two statutes, even if those two statutes proscribe the 'same' conduct, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983); *Jimenez v. State*, 240 S.W.3d 384, 417–18 (Tex. App.—Austin 2007, pet. ref'd); *see also Desormeaux v. State*, 362 S.W.3d 233, 236 (Tex. App.—Beaumont 2012, no pet.) (holding that convictions for injury to a child and capital murder for death of the child did not violate double jeopardy).[4]

---

[4] In *Almaguer v. State*, the "State concede[d] Almaguer's point on appeal and agrees that only one judgment in this case can stand, and the others must be vacated." 492 S.W.3d 338, 346 (Tex. App.—Corpus Christi 2014, pet. ref'd). As a result, the court did not address the effect of section 22.04(h) which permits multiple punishments for injury to a child. *See* TEX. PENAL CODE ANN. § 22.04(h) (West, Westlaw through 2017 1st C.S.) ("A person who is subject to prosecution under both this section and another section of this code may be prosecuted under either or both sections."). Thus, *Almaguer* does not control the disposition in this case.

**B.     The *Blockburger* Test**

A person commits manslaughter if she recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a); *Ex parte Ervin*, 991 S.W.2d at 806.   The elements of intentional or knowing injury to a child are: 1) a person, 2) intentionally or knowingly, 3) caused serious bodily injury, (4) to a child 14 years of age or younger.   TEX. PENAL CODE ANN. § 22.04(a); *Wortham v. State*, 412 S.W.3d 552, 554–55 (Tex. Crim. App. 2013). Injury to a child requires that the injured person be a child and does not require that the child die.   *See In re L.M.*, 993 S.W.3d 276, 283 (Tex. App.—Austin 1999, pet. denied) (comparing elements of injury to a child and other offenses using *Blockburger* test). Manslaughter does not require a child victim but requires a death.   *See* TEX. PENAL CODE ANN. § 19.04.   In addition, the *mens rea* for each offense is different: manslaughter requires recklessness, but Hernandez was convicted of intentionally or knowingly causing injury to a child.   *See id.* §§ 19.04, 22.04.   Because the elements do not match under the *Blockburger* test, there is no double jeopardy. *See Blockburger,* 284 U.S. at 304.

**C.     Legislative Intent for Cumulative Punishment**

However, even if the elements matched under *Blockburger,* injury to a child may be punished under more than one provision of the penal code: "A person who is subject to prosecution pursuant to [section 22.04] and another section of this code may be prosecuted under either or both sections."   TEX. PENAL CODE ANN. § 22.04(h) (West, Westlaw through 2017 1st C.S.); *see Hunter*, 459 U.S. at 368–69; *Jimenez*, 240 S.W.3d at 417–18 (holding that convictions for both felony murder and injury to a child in the same trial do not violate double jeopardy); *Williams v. State*, 294 S.W.3d 674, 680 (Tex. App.—

Houston [14th Dist.] 2009, pet. ref'd) (holding that convictions for capital murder and injury to a child did not violate double jeopardy); *see also Herrera v. State*, No. 13-11-00036-CR, 2011 WL 5005581, at *10 (Tex. App.—Corpus Christi Oct. 20, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that convictions for capital murder and injury to a child in the same trial do not violate double jeopardy and collecting cases). Because the Texas Legislature has specifically authorized cumulative punishments for injury to a child, there is no double jeopardy violation. *See* TEX. PENAL CODE ANN. § 22.04(h); *Hunter*, 459 U.S. at 368–69.

We overrule Hernandez's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

By issues two and fourteen, Hernandez challenges the sufficiency of the evidence to support her convictions.[5]

### A. Standard of Review

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *In re Winship,* 397 U.S. 358, 361 (1970)). We apply the sufficiency standard from *Jackson*, which requires the reviewing court to "view[] the evidence in the light most favorable to the prosecution," to determine whether "any rational trier of fact could have

---

[5] By issue three, Hernandez argues that we may not use any state statute, rule, or doctrine to avoid judicial determination of constitutional sufficiency on count one. We construe Appellant's third issue to challenge section 6.03(e)'s use in the sufficiency analysis. *See* TEX. PENAL CODE ANN. § 6.03 (West, Westlaw through 2017 1st C.S.) (stating that"[p]]proof of higher degree of culpability than that charged constitutes proof of the culpability charged."). The State argues issue three is inadequately briefed. Issue three is briefed on a single page and does not cite the record. It cites federal authority but does not tie that authority to Hernandez's complaint. We agree that Hernandez inadequately briefed issue three, therefore, we do not address it. *See* TEX. R. APP. P. 38.1(i); *see Lucio v. State*, 351 S.W.3d 878, 898 (Tex. Crim. App. 2011); *Denoso v. State*, 156 S.W.3d 166, 183–84 (Tex. App.—Corpus Christi 2005, pet. ref'd).

found the essential elements of the crime beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319). When a reviewing court views the evidence in the light most favorable to the verdict, it "is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. If the record supports conflicting inferences, we presume that the fact finder resolved the conflict in favor of the prosecution and defer to that resolution. *Garcia v. State*, 367 S.W.3d 684, 686–87 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

Constitutional review of the sufficiency of the evidence is measured against the elements of the criminal offense as defined by state law. *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002) (citing *Jackson*, 443 U.S. at 324 n.16). However, review of the "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Garcia*, 367 S.W.3d at 687 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

## B.    Count One

Hernandez was charged with capital murder in count one, but the jury convicted her of manslaughter. TEX. PENAL CODE ANN. §§ 19.03, 19.04. Hernandez challenges the sufficiency of the evidence that her conduct was committed recklessly and whether

14

that conduct caused the death of Baby Hernandez.

Because manslaughter is a result-oriented offense, the defendant's mental state must relate to the result of her actions. *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013). "A person acts recklessly with respect to the result of [her] conduct when [s]he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur." TEX. PENAL CODE ANN. § 6.03(c) (West, Westlaw through 2017 1st C.S.); *Atkinson v. State*, 517 S.W.3d 902, 906 (Tex. App.—Corpus Christi 2017, no pet.).

Additionally, under Texas law, "[p]roof of a higher culpability than that charged constitutes proof of the culpability charged." TEX. PENAL CODE ANN. § 6.03(e). Thus, if the evidence is sufficient to prove that Hernandez acted intentionally, it is also sufficient to prove that she acted recklessly in causing the death of her child. *Id.*; *Wayslina v. State*, 275 S.W.3d 908, 910 (Tex. Crim. App. 2009); *see Brown v. State*, 296 S.W.3d 371, 382 (Tex. App.—Beaumont 2009, pet. ref'd).

A jury may infer a culpable mental state from circumstantial evidence such as acts, words, the conduct of the defendant, and from the nature and extent of the injury inflicted. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Atkinson*, 517 S.W.3d at 906; *see also Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding that evidence of severe brain injury was sufficient to show intent to kill ten-month-old victim). The jury may use its collective common sense and apply common knowledge and experience to determine whether the culpable mental state for a homicide offense was proven. *Atkinson*, 517 S.W.3d at 906. It is a "common-sense inference" that a person

"intends the natural consequences of [her] acts[.]" *Soliz v. State*, 432 S.W.3d 895, 900 (Tex. Crim. App. 2014).

There was no direct evidence of how Baby Hernandez received the injuries that led to his death. Several Hernandez family members repeated what Hernandez told them that morning: 1) she did not know she was pregnant; 2) she gave birth in her bed, 3) she went outside, slipped in blood, and fell on the lawn; 4) while she was inside, she slipped on the tile slope between the living room and dining room; and 5) both times she fell on top of the baby. Hernandez was the only person with Baby Hernandez until the baby was found outside after the EMTs arrived.

Dr. Farley testified that Baby Hernandez's multiple skull fractures were not consistent with a fall or with difficult childbirth but were instead consistent with multiple blows in which the infant's head struck an object with force or was stuck by an object with force. On the other hand, Dr. Mattioli testified that a fall could have caused the infant's skull fractures. Hernandez argues other medical evidence supports her contention, but her citation to the record does not support her argument.[6]

The jury could have inferred that Hernandez slammed the baby's head into an object or struck the baby's head with an object either intending to kill him or knowing that her action could cause serious injury resulting in death. *See Stepherson v. State*, 523 S.W.3d 759, 764 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding that "based on the evidence regarding the nature of the attack, the jury reasonably could have concluded that appellant was aware of and consciously disregarded a substantial and unjustifiable

---

[6] Although Appellant's counsel cites Dr. Sidharthan's testimony, Dr. Sidharthan did not testify at trial.

16

risk that [the decedent's] death would be the result of the beating."); *Yglesias v. State*, 252 S.W.3d 773, 779 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that the evidence was sufficient to support a manslaughter conviction where the defendant had sole care of child who suffered retinal hemorrhaging and skull fractures).

Because the legislature prescribed that a higher level of culpability constitutes proof of the lesser culpability, the *Jackson* standard is satisfied if a rational jury could have determined that Hernandez intended to cause the death of her child or recklessly did so. *See* TEX. PENAL CODE ANN. 6.03(e). We conclude that the evidence is sufficient in either case.

We overrule Hernandez's second issue.

## C.    Count Two

By issue fourteen, Hernandez challenges the sufficiency of the evidence to support her conviction in count two, injury to a child. *See id.* § 22.04. By issues ten, eleven, fifteen, and twenty-two, that we address separately in Part IV, she separately challenges the judgment on grounds that the jury was not unanimous, there was a fatal variance in the jury charge, and the jury charge amended the indictment.

As with manslaughter, injury to a child is a result-oriented crime, which means the culpable mental state relates to causing the result rather than merely engaging in the conduct and mental culpability usually must be inferred from the circumstances. *Kelley v. State*, 187 S.W.3d 761, 763 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). A person acts intentionally with respect to a result of her conduct when it is her conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a). Serious bodily

17

injury is a "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (West, Westlaw through 2017 1st C.S.).

When an adult defendant has had sole access to a child at the time the child sustained injuries, Texas courts have repeatedly found the evidence sufficient to support a conviction for intentional injury to a child or murder if the child dies. *See Yglesias*, 252 S.W.3d at 779; *Robbins v. State*, 27 S.W.3d 245, 248 (Tex. App.—Beaumont 2000), *aff'd*, 88 S.W.3d 256 (Tex. Crim. App. 2002) (affirming conviction for capital murder where defendant was alone with toddler when she sustained fatal injuries); *Garcia v. State*, 16 S.W.3d 401, 405 (Tex. App.—El Paso 2000, pet. ref'd) (affirming capital murder of a child); *Bryant v. State*, 909 S.W.2d 579, 583 (Tex. App.—Tyler 1995, no pet.) (affirming conviction for aggravated injury to child); *see also Elledge v. State*, 890 S.W.2d 843, 846–47 (Tex. App.—Austin 1994, pet. ref'd) (affirming conviction for injury to a child for head injuries that occurred when the defendant was alone with the baby).

"Proof of a defendant's culpable state of mind is almost invariably proven by circumstantial evidence. On the question of intent, the jury is called upon to review all the evidence and may reasonably conclude from the circumstantial evidence that the requisite mental state existed . . .". *Morales v. State*, 828 S.W.2d 261, 263 (Tex. App.—Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex. Crim. App. 1993). In *Morales*, the defendant was convicted of intentionally causing serious bodily injury to a child when the child "was found to have . . . comminuted skull fractures where the actual crack in the skull goes in more than one direction. And he was found to have blood around the brain, intercranial

18

bleeding [and] hemorrhage into the eyes." *Id.* at 264. "Medical evidence of this nature is sufficient for the jury to infer appellant's intent to cause the child serious bodily injury." *Id.*

Considering the evidence in the light most favorable to the verdict, as we must, we conclude the medical evidence detailed in Parts I(B) and III(B) of this memorandum opinion enabled the jury to find that Hernandez struck Baby Hernandez with an object or slammed the child into an object that caused the multiple skull fractures and that she intended to cause serious bodily injury to him. *See Patrick*, 906 S.W.2d at 487; *Martinez v. State*, 468 S.W.3d 711, 715 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that the child's injuries, which were consistent with repeated violent shaking and forceful head impact, supported an inference that they were caused intentionally or knowingly); *Herrera v. State*, 367 S.W.3d 762, 771–72 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that "[t]he severity and number of [the child's] injuries also support a finding that appellant caused them intentionally or knowingly. Intent can be inferred from the extent of the injuries to the victim . . . .").

We hold the evidence is sufficient to support Hernandez's conviction on count two and overrule issue fourteen.

## IV. IDENTIFICATION OF THE VICTIM, VARIANCE, AND JURY UNANIMITY

By issues ten, eleven, fifteen, and twenty-two, Hernandez challenges the sufficiency of the evidence of the identity of the victim and the unanimity of the jury's verdict. By issues twelve and thirteen, Hernandez complains that the jury charge effectively violated article 28.10 of the code of criminal procedure by amending the

19

indictment. TEX. CODE CRIM. PROC. ANN. art. 28.10 (West, Westlaw through 2017 1st C.S.). By issues sixteen and seventeen, Hernandez argues that there is a material variance in count two between "Jose" as alleged in the indictment,[7] and the application paragraph that referenced "Joel."

## A. Evidence of Baby Hernandez's Name

Baby Hernandez was identified at trial three different ways: as Baby Hernandez, *Joel* Lionel Jimenez, and as *Julian* Lionel Jimenez. Evidence included a baptism certificate for *Joel* Lionel Jimenez,[8] the child of Joel Jimenez and Sandy Hernandez, and Investigator Noe Salazar of the HCSO testified that he heard Hernandez tell the priest that the baby's name was Joel Lionel Jimenez. However, Jimenez testified that his son's name was Julian Jimenez and Sally testified that Hernandez named the baby Julian Lionel Jimenez. The autopsy report prepared by Dr. Farley indicates that the subject is Julian Jimenez, Baby Boy Hernandez. The medical records reference Baby Boy Hernandez. The evidence does not include either a birth or death certificate.

During closing, the State reminded the jury that it heard evidence that the baby's name was both Joel and Julian and that Investigator Salazar identified an autopsy photo as the child he believed was named Joel Lionel Jimenez. There was no mention at trial of the name *Jose* Lionel Jimenez other than in the indictment.

## B. Sufficiency of the Evidence of Identification of the Infant

---

[7] Hernandez did not object to the indictment before trial. As a result, she waived any complaint regarding defects or errors in the indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West, Westlaw through 2017 1st C.S.); *Salahud-din v. State*, 206 S.W.3d 203, 212 (Tex. App.—Corpus Christi 2006, pet. ref'd).

[8] Hernandez asked the priest at the hospital to baptize her son before he died.

Hernandez challenges the sufficiency of the evidence of identification of the victim on count two pursuant to the *Jackson* standard. 443 U.S. at 319. She argues that the evidence is insufficient to prove the death of *Julian* Lionel Jimenez based upon the name in the jury charge. *See Fuller*, 73 S.W.3d at 252 (federal constitutional law measures evidentiary sufficiency against the "elements of the criminal offense as defined by state law"). We review her challenge using the *Jackson* standard, as discussed in Part III(A). 443 U.S. at 319.

Hernandez was convicted of injury to a child for the death of *Joel* Lionel Jimenez. There was evidence at trial that identified Hernandez's newborn as *Joel* Lionel Jimenez and other evidence that his name was *Julian* Lionel Jimenez. However, state law does not require the name of the victim as a substantive element of injury to a child. *See* TEX. PENAL CODE ANN. § 22.04; *Vaughn v. State*, 530 S.W.2d 558, 560 (Tex. Crim. App. 1976) (holding that failure to set out the name of the child in an indictment for burglary with intent to injure a child did not render indictment fatally defective). Because sufficiency does not require the name of the deceased victim as an element of the crime, the difference in the name in the jury charge and Hernandez's asserted legal name of the baby does not affect this Court's sufficiency analysis. The evidence is sufficient to support Hernandez's conviction on count two for intentional injury to her infant son.

We overrule Hernandez's fifteenth and twenty-second issues.

**C.    Variance**

Hernandez's issues thirteen, sixteen, and seventeen argue that the jury charge fatally varied from the indictment in count two and deprived Hernandez of the notice

21

required by due process.

### 1. Standard of Review and Applicable Law

The general rule that allegations and proof must correspond is based upon the obvious requirements: 1) that the accused shall be definitely informed as to the charges against her, so that she may be enabled to present her defense and not be taken by surprise by the evidence offered at the trial; and 2) that she may be protected against another prosecution for the same offense. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Variance between the indictment and the jury's verdict or the evidence is treated as an insufficiency claim that we review under the *Jackson* standard. 443 U.S. at 319; *see Gollihar*, 46 S.W.3d at 247. Although "variance law pre-dates *Jackson*, it has since been viewed by this Court as subsumed by the *Jackson* standard . . .". *Gollihar*, 46 S.W.3d at 246; *see Hernandez v. State*, 556 S.W.3d 308, 314 (Tex. Crim. App. 2017) (op. on reh'g) (finding no material variance). "A variance becomes 'fatal' when the variance between the indictment and the evidence at trial denies the defendant notice of the charges against [her]." *Gollihar*, 46 S.W.3d at 256.

Mistakes or variances that do not prejudice a defendant's substantial rights are immaterial. *Byrd v. State*, 336 S.W.3d 242, 247–48 (Tex. Crim. App. 2011). "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." *Berger v. United States*, 295 U.S. 78, 82 (1935); *Gollihar*, 46 S.W.3d at 246. "[I]f, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless." *Berger*, 295 U.S. at 82.

## 2. Discussion

Hernandez gave birth on October 17, 2014, and her child died later that same day of head injuries. Those facts are not controverted. The name of Baby Hernandez is not clear from the evidence as discussed in Part IV(A), but that Hernandez had only one child who died from head injuries on October 17, 2014 is beyond dispute. The cause of the child's head injuries and whether those injuries were caused by Hernandez's criminal acts or caused accidentally were the focus of the proceedings.

Hernandez was indicted in count one for "intentionally and knowingly caus[ing] the death of an individual, namely *Joel* Lionel Jimenez . . .". In count two Hernandez was indicted for:

> intentionally and knowingly caus[ing] serious bodily injury to *Joel* Lionel Jimenez . . . by manner and means unknown or unknowable to the grand jurors; . . .

> intentionally and knowingly cause[ing] serious bodily injury to *Jose* Lionel Jimenez . . . by striking *Joel* Lionel Jimenez against an object unknown to the grand jurors*;* and . . .

> intentionally and knowingly cause[ing] serious bodily injury to *Jose* Lionel Jimenez . . . by striking *Joel* Lionel Jimenez . . . .

Count two alleged three separate ways in which Hernandez caused injury to the child. Count two has what appears to be typographical error in the second and third paragraphs which state that striking *Joel* Lionel Jimenez caused injury to *Jose* Lionel Jimenez. The jury charge for count two identifies the injured child solely as *Joel* Lionel Jimenez:

> Now if you find from the evidence beyond a reasonable doubt that on or about October 17, 2014, in Hidalgo County, Texas, the Defendant, SANDY PEREZ HERNANDEZ, did then and there intentionally or knowingly cause serious bodily injury to Joel Lionel Jimenez, a child 14 years of age or younger, by manner and means unknown and unknowable to the grand jurors, or by striking him against an object unknown to the grand jurors or

by striking him with an object unknown to the grand jurors, then you will find the Defendant GUILTY of the offense of INJURY TO A CHILD as charged in the indictment.

Defense counsel did not object to the jury charge, nor did he request a different submission.

Hernandez argues that the variance between the jury charge and the evidence was "so significant that it left the jury [and this Court] unable to tell whether the victim proven was the same person as the victim alleged." The State responded that the name of the victim in a result of conduct case is not a statutory element but relates to the unit of prosecution. *See Johnson v. State*, 364 S.W.3d 292, 294–95 (Tex. Crim. App. 2012); *Fuller*, 73 S.W.3d at 253–54; *Kelley*, 187 S.W.3d at 763.

We use the factors outlined in *Berger* and *Byrd* to determine whether Hernandez's substantial rights have been prejudiced. 295 U.S. at 82; 336 S.W.3d at 247–48. A variance such as the name of the victim in a result-of-conduct offense "can never be material because such a variance can never show an 'entirely different offense' than what was alleged." *Johnson*, 364 S.W.3d at 298. The evidence is that the child to whom Hernandez gave birth on October 17, 2014 is the child who died. Hernandez has not demonstrated that she was deprived of notice and she is not subject to double jeopardy as a result of the typographical error in the indictment. Here, the variance between the indictment and the jury charge is immaterial.[9]

---

[9] Although Hernandez alleges that the variance between the indictment and the jury charge is structural error and not subject to a harm analysis citing *Adames v. State*, 353 S.W.3d 854, 858–59 (Tex. Crim. App. 2011) and *Wooley v. State*, 273 S.W.3d 260, 268 (Tex. Crim. App. 2008), the Court is not persuaded. *Wooley* reversed a conviction of the defendant as a party to the offense when that theory was not in the indictment. 273 S.W.3d at 268. In *Adames*, the defendant was charged with capital murder, but the jury charge did not include the language necessary to convict him as a party in the application paragraph and the evidence was insufficient to support his conviction as a primary actor. 353 S.W.3d at

24

We overrule Hernandez's thirteenth, sixteenth and seventeenth issues.

## D. Amendment of the Indictment

By issue twelve, Hernandez contends that the jury charge effectively amended paragraphs two and three of count two of the indictment in violation of article 28.10. TEX. CODE CRIM. PROC. ANN. art. 28.10 (West, Westlaw through 2017 1st C.S.) (amendment of indictment). However, "[a]n amended indictment does not charge the defendant with a different offense if the amendment alters an element of the offense charged . . . *or changes the name of the complainant.*" *Id.* art. 28.10(c) (emphasis added); *see also Marks v. State*, 525 S.W.3d 403, 412 (Tex. App.—Houston [14th Dist.] 2017), *aff'd,* 560 S.W.3d 169 (Tex. Crim. App. 2018); *Bynum v. State*, 874 S.W.2d 903, 905–06 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that changing the name of the person assaulted in the indictment did not prejudice the defendant's substantial rights or violate article 28.10(c)).

Further, article 28.10 provides in part that the indictment may be amended after trial commences if the defendant does not object. *Id.* art. 28.10(b). To the extent the jury charge amended the indictment, Hernandez did not object and therefore waived this issue. *See* TEX. R. APP. P. 33.1(a)(1); *Hoitt v. State*, 30 S.W.3d 670, 674 (Tex. App.—Texarkana 2000, pet. ref'd). We overrule Hernandez's twelfth issue.

## E. Jury Unanimity

By issues ten and eleven, Hernandez challenges her conviction on count two contending that the State failed to obtain a unanimous jury verdict. Hernandez argues

858–59.

that because the indictment in two paragraphs of count two referred to *Jose* Lionel Hernandez, which was not part of the jury charge, the trial court should have granted her motion for new trial on that ground. In support, Hernandez cites *Ngo v. State*, 175 S.W.3d 738, 751 (Tex. Crim. App. 2005).

### 1. Standard of Review and Applicable Law

We review jury charge issues to first determine whether error exists. *Id.* at 743. If we find error, we analyze the error for harm. *Id.* If the defendant failed to preserve error, we will not reverse unless we find egregious harm. *Id.* at 744. "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016) (internal citation omitted); *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Under the relevant standard, we have traditionally considered (1) the entirety of the jury charge, (2) the state of the evidence, (3) counsel's arguments, and (4) any other relevant information revealed by the entire trial record. *Marshall*, 479 S.W.3d at 843.

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014). "The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present an appropriate case for the trial court's action, but rather, 'whether the trial court acted without reference to any guiding rules or principles.'" *Id.*

### 2. Discussion

The Texas Constitution requires that a criminal "jury must unanimously agree

26

about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011); *see also O'Brien v. State*, 544 S.W.3d 376, 382 (Tex. Crim. App. 2018); TEX. CONST. Art. 5, § 13. "[N]on-unanimity may occur when the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results of the conduct differed." *Cosio v. State*, 353 S.W.3d 766, 771–72 (Tex. Crim. App. 2011). "[N]on-unanimity may [also] occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. Each of the multiple incidents individually establishes a different offense or unit of prosecution." *Id.* at 772. "[T]hird and finally, non-unanimity may occur when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute." *Id.*

In *Ngo*, the State charged the defendant with committing three separate crimes under section 32.31 of the penal code: 1) stealing a credit card belonging to another, 2) receiving a credit card from another knowing that it had been stolen and acting with intent to use it, and 3) presenting the credit card of another with the fraudulent intent to obtain a benefit knowing its use was without the effective consent of the owner. *Ngo*, 175 S.W.3d at 744; TEX. PENAL CODE ANN. § 32.31(b) (West, Westlaw through 2017 1st C.S.). The jury charge allowed the jury to convict Ngo by a general verdict if it found any one of the offenses as proved. *Ngo*, 175 S.W.3d at 744. The error was that not all of the jurors had to agree on which of the crimes were committed. *Id.* *Ngo* provides an example of

27

the third kind of non-unanimous verdict described in *Cosio*. *See Cosio*, 353 S.W.3d at 772.

*Ngo* unanimity is not the issue here. There is only one crime alleged, injury to a child, who is mistakenly referred to as Jose in two of the three paragraphs of count two of the indictment. Injury to a child is a result-of-conduct offense in which the gravamen of the offense is the injury to the victim. *See O'Brien*, 544 S.W.3d at 383; *Young*, 341 S.W.3d at 423 (describing result-of-conduct offenses); *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006) (noting that injury to a child is a result-of-conduct offense). The name of the child is not an element of the offense. The jury's answer to the question in count two is supported by the evidence that Joel Lionel Jimenez was the injured child, although the charge differs from the indictment.

As discussed in previous parts of this memorandum opinion, there was only one child in this case, the child to whom Hernandez gave birth and who died. The jury charge asked the jury to decide whether Hernandez had the requisite intent on October 17, 2014 to cause serious injury to that child and it unanimously found that she did.

To the extent there was error as Hernandez alleges (although we do not find any), we do not find egregious harm from the error. The discrepancy between the indictment and the jury charge did not affect Hernandez's defense, which was that she accidentally fell on the baby, nor did it deprive her of a valuable right, or affect the very basis of the case. *See* Marshall, 979 S.W.2d at 843. Accordingly, the trial court did not abuse its discretion by denying Hernandez's motion for new trial on this issue.

We overrule Hernandez's issues ten and eleven.

28

**V. OMISSION OF VOLUNTARY CONDUCT AND RELATED ISSUES FROM JURY INSTRUCTIONS**

By issues five, seven, eight, twenty, and twenty-one, Hernandez complains that the trial court failed to instruct the jury that Hernandez's alleged criminal conduct must have been voluntary and contends that the jury could not have properly judged the case without that instruction. *See* TEX. PENAL CODE ANN. § 6.01 (West, Westlaw through 2017 1st C.S.). By issue six, Hernandez argues that omission of the instruction on voluntary conduct caused harm. Hernandez also complains of the trial court's concomitant failure to define "act" or to instruct on the burden of proof related to any defensive issue. *See id.* §§ 1.07(a)(1), 2.03(d) (West, Westlaw through 2017 1st C.S.).

**A. Standard of Review**

As discussed in Part IV(A), we review challenges to the jury charge to determine whether there was error, and if not preserved, whether the error caused egregious harm. *Vasquez v. State*, 389 S.W.3d 361, 369 (Tex. Crim. App. 2012); *Ngo*, 175 S.W.3d at 743–44.

**B. Voluntary Conduct and Law Applicable to the Case**

**1. Definition of Voluntary Conduct**

Section 6.01(a) states: "A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX. PENAL CODE ANN. § 6.01. "The issue of voluntariness of one's conduct is separate from the issue of one's mental state" and relates "only to one's own physical body movement." *Febus v. State*, 542 S.W.3d 568, 574 (Tex. Crim. App. 2018). "If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-

human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis, or other nonvolitional impetus, that movement is not voluntary." *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003).

### 2. Law Applicable to the Case

Hernandez argues that because article 36.14 requires the trial court to instruct the jury on the law applicable to the case, the trial court is required to include unrequested defensive issues, citing *Taylor v. State.   See* TEX. CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2017 1st C.S.); 332 S.W.3d 483 (Tex. Crim. App. 2011).   By issue five, Hernandez argues that because the evidence could support a finding that Baby Hernandez's death resulted from Hernandez's falling on the tile and lawn and not by any intentional or reckless act, the jury should have been instructed on voluntariness in the jury charge.

"[A]n instruction on voluntariness under section 6.01(a) is necessary only if the accused admits committing the act or acts charged and seeks to absolve [her]self of criminal responsibility for engaging in the conduct."   *Chakravarthy v. State*, 516 S.W.3d 116, 133 (Tex. App.—Corpus Christi 2017, pet. ref'd) (citing *Peavey v. State*, 248 S.W.3d 455, 465 (Tex. App.—Austin 2008, pet. ref'd)); *Trujillo v. State*, 227 S.W.3d 164, 169 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Bell v. State*, 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no pet.).   As such, it is a defensive issue**.   *See Bundage v. State*, 470 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2015, no pet).

"An unrequested defensive issue is not the law applicable to the case."   *Taylor*, 332 S.W.3d at 487 (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998)).

Although "[a] defendant is entitled, upon a timely request, to an instruction on any defensive theory raised by the evidence," she must timely request an instruction on that specific theory, and the evidence must raise that issue. *Rogers v. State*, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003); *Brown v. State*, 955 S.W.2d 276, 279–80 (Tex. Crim. App. 1997). The trial court does not have an obligation to include defensive issues in the jury charge absent a request or objection by defense counsel. *See Posey*, 966 S.W.2d at 62.

To preserve error for appellate review, the defendant must sufficiently identify the defensive theory for which she seeks an instruction. *Rogers*, 105 S.W.3d at 639–40; *Posey*, 966 S.W.2d at 63–64. Hernandez did not request this defensive issue, nor did she object to its absence from the jury charge. *See* TEX. R. APP. P. 33.1. "A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that [s]he did not preserve by request or objection: [s]he has procedurally defaulted any such complaint." *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Posey*, 966 S.W.2d at 63–64.

Because the trial court was not required to include an unrequested defensive issue and Hernandez failed to preserve any issue, we overrule Hernandez's fifth, sixth, twentieth, and twenty-first issues.

**C.      Omission of Jury Instructions and Definitions on Sections 1.07(a)(1), 2.03(d), and 6.01 of the Penal Code**

Hernandez argues by issues seven and eight that the omission of jury instructions on sections 1.07(a)(1), 2.03(d), and 6.01 of the penal code deprived her of constitutional due process, trial by an impartial jury, a complete verdict, and resulted in harm. *See*

TEX. PENAL CODE ANN. §§ 1.07(a)(1), 2.03(d), 6.01 (West, Westlaw through 2017 1st C.S.).

### 1. Standard of Review

A trial court has broad discretion in submitting instructions and definitions to the jury. *See Nejnaoui v. State*, 44 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). A trial court abuses its discretion when it acts without reference to guiding principles or rules and outside the wide zone of reasonable disagreement. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). A trial court must define any legal phrase that a jury must necessarily use in properly resolving the issues. *Breckinridge v. State*, 40 S.W.3d 118, 123 (Tex. App.—San Antonio 2000, pet. ref'd.).

Although the failure to define a statutory term in the jury charge may constitute error, in the absence of preservation of that error, we may only reverse if the error causes egregious harm. TEX. CODE CRIM. PROC. ANN. art. 36.19 (West, Westlaw through 2017 1st C.S.); *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) (op. on reh'g); *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

### 2. Definitions and Instruction

Section 1.07(a)(1) defines "act" to be "a bodily movement, whether voluntary or involuntary." TEX. PENAL CODE ANN. § 1.07(a)(1). Section 1.07(a)(1) is not a defensive issue. *Id.* Hernandez did not request that "act" be defined, nor did she object to its omission.

Section 2.03(d) states that if a defensive issue is submitted to the jury, the jury

32

must be instructed that reasonable doubt on the issue requires the defendant be acquitted. *Id.* § 2.03(d).

### 3. Discussion

Hernandez's explanation for the injury to her baby is that she fell and accidentally crushed the baby on the tile floor in the house and again outside. Testimony of Hernandez's family and the defense expert supported her claim. Opposing testimony was presented by Dr. Farley who opined that the baby's injuries were a result of substantial force that is greater than what could have come from the alleged falls. During closing argument, the State argued:

> I don't believe the evidence supports reckless or negligent. In my opinion, either she intentionally and knowingly did this and killed her child, or if you want to believe from the evidence what the Defense says that it was an accident, oh well, she slipped and she fell and that caused the injuries, or well, it was a traumatic birth and that caused the injuries.
>
> Well if that's the case, then she wouldn't be guilty of either of these because she hasn't ignored any risk. What risk would she have ignored? Stepping on the slope there in the kitchen. It doesn't work. . . . If it is an accident, well then she is not guilty of a crime. It's an accident. The baby died as an accident. It was not intentional. It was not knowingly. She didn't ignore some risk. If it's an accident, she's not guilty if you want to believe that. But I think the evidence shows otherwise.

Defense counsel argued reasonable doubt, traumatic birth injuries, and accident. The jury was clearly aware from the State's argument that guilt had to be premised on action, not an accident. The definition of "act" that "is a bodily movement, whether voluntary or involuntary, and includes speech" would not have enlightened the jury in the circumstances here and we hold that no harm is shown from its omission. The trial court did not abuse its discretion in failing to define "act." Because the omission of the

33

definition was not error, we do not consider harm. *Ngo*, 175 S.W.3d at 743.

Because Hernandez did not request any defensive issues, Hernandez was not entitled to an instruction pursuant to section 2.03(d). We addressed section 6.01 in Part V(B).

We overrule Hernandez's seventh and eighth issues.

## VI.    ADMISSION OF EXPERT TESTIMONY

Hernandez challenges the testimony of Dr. Farley on the grounds that "it fails to meet requisite standards" by issue twenty-six and multiple subparts.[10]    However, defense counsel did not object to Dr. Farley's testimony before or at trial.

"To preserve an issue for appellate review, a complainant must have made a timely and specific objection, and the trial court must have ruled on the objection either expressly or implicitly." TEX. R. APP. P. 33.1(a); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013).    The objection must be specific enough "to make the trial court aware of the complaint." *Everitt*, 407 S.W.3d at 263.    Defense counsel did not preserve a complaint regarding admission of Dr. Farley's testimony.    *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (holding failure to timely object to testimony waived issue on appeal); *Brimage v. State*, 918 S.W.2d 466, 504 (Tex. Crim. App. 1994) (holding that failure to object to medical examiner's response to objected-to question waived appellate review); *Croft v. State*, 148 S.W.3d 533, 544 (Tex. App.—Houston [14th Dist.] 2004, no

---

[10] Hernandez argues that Dr. Farley's causation testimony: 1) was not based upon verifiable medical facts, 2) did not address how the scientific method applies to her conclusions, 3) does not relate to Hernandez's *mens rea*, 4) does not prove the *corpus delcti*; 5) generally does not connect Hernandez to any crime, 6) does not establish the voluntariness of Hernandez's actions, and 7) does not address concurrent causation.

pet.) (noting that failure to object to expert's qualifications waives assertion of error on appeal). We overrule Hernandez's twenty-sixth issue.

## VII. SHERIFF'S FILE AND *BRADY V. MARYLAND*

During the motion for new trial proceedings, defense counsel subpoenaed the records custodian for HCSO to the hearing with a duces tecum for the investigation file. The State, without having the opportunity to review the subpoenaed file, objected to release of the file based upon the family code and article 39.14. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (West, Westlaw through 2017 1st C.S.); TEX. FAM. CODE ANN. § 264.408 (West, Westlaw through 2017 1st C.S.). The trial court sustained the objection and ordered the file sealed and turned over to the trial court. By issues twenty-eight, twenty-nine, thirty, and thirty-one, Hernandez argues a violation of article 39.14 and *Brady v. Maryland. See* TEX. CODE CRIM. PROC. ANN. art. 39.14; 373 U.S. 83 (1963).

### A. Standard of Review

Article 39.14 generally requires the State to turn over evidence upon request by the defense with exceptions for materials protected by section 264.408 of the family code, article 39.15 of the code of criminal procedure, and other privileged materials. *See* TEX. CODE CRIM. PROC. ANN. arts. 39.14(a), 39.15 (West, Westlaw through 2017 1st C.S.); TEX. FAM. CODE ANN. § 264.408; *In re State ex rel. Skurka*, 512 S.W.3d 444, 453 (Tex. App.— Corpus Christi 2016, orig. proceeding) (noting article 39.14 sets out the scope of criminal discovery).[11] To trigger the requirements of Article 39.14, a defendant must make a

---

[11] Section 264.408 of the family code protects information gathered in a child abuse investigation by the Children's Advocacy Center and collected in any investigation into abuse or neglect. *See* TEX. FAM. CODE ANN. § 264.408 (West, Westlaw through 2017 1st C.S.). To the extent that materials protected by section 264.408 were included in the Sheriff's file, the procedures in article 39.15 adequately protect a

timely request to the State that designates the items requested to be produced. *Davy v. State*, 525 S.W.3d 745, 750 (Tex. App.—Amarillo 2017, pet. ref'd); *Glover v. State*, 496 S.W.3d 812, 815 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Absent such a request, the State's affirmative duty to disclose evidence extends only to exculpatory information. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(h).

"[T]he Texas Legislature intended article 39.14 to constitute a comprehensive pretrial discovery statute[] and that criminal discovery orders must fall within the confines of that article's limited authorization." *See State ex rel. Wade v. Stephens*, 724 S.W.2d 141, 144 (Tex. App.—Dallas 1987, orig. proceeding); TEX. CODE CRIM. PROC. ANN. art. 39.14. A corollary is that trial courts lack inherent authority to order pretrial discovery any greater than that authorized by article 39.14. *State ex rel. Wade*, 724 S.W.2d at 144.; *Branum*, 535 S.W.3d at 224; *In re State ex. rel. Munk*, 448 S.W.3d 687, 692 (Tex. App.—Eastland 2014, orig. proceeding) (holding that trial court exceeded its authority in ordering discovery broader than article 39.14 requirements); *see also In re Hon*, No. 09–16–00301–CR, 2016 WL 6110797, at *2 (Tex. App.—Beaumont Oct. 19, 2016, orig. proceeding) (mem. op., not designated for publication).

We review a trial court's orders on discovery for an abuse of discretion. *See Horne v. State*, 554 S.W.3d 809, 814–15 (Tex. App.—Waco 2018, pet ref'd) (applying abuse of discretion standard to trial court's resolution of discovery complaint); *Branum v. State*, 535 S.W.3d 217, 224 (Tex. App.—Fort Worth 2017, no pet.); *Davy*, 525 S.W.3d at

---

defendant's right to confrontation. *See Gonzalez v. State*, 522 S.W.3d 48, 64 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *In re Fulguim*, 150 S.W.3d 252, 255 (Tex. App.—Texarkana 2004, orig. proceeding) (order preventing disclosure of protected records was not an abuse of discretion).

751.

## B.     Article 39.14 and Exceptions

The trial court found that Hernandez's subpoena was an improper end-run around article 39.14 and denied Hernandez access to the HCSO file.   Hernandez has not set forth any basis for her claim that the State withheld materials to which article 39.14 applies other than the statement from the assistant district attorney at the motion for new trial hearing that "most of this has been turned [over] under 39.14 which is the exclusive discovery method."   The burden is on the defendant to demonstrate that the State withheld materials that she was entitled to receive based upon her request for discovery pursuant to article 39.14.   *See Horne*, 554 S.W.3d at 814.   Because Hernandez did not meet her burden, the trial court did not abuse its discretion in denying her access to the file.   *Id.* at 815.

We overrule Hernandez's twenty-eighth, twenty-ninth, and thirtieth issues.

## C.     *Brady v. Maryland*

By her thirty-first issue, Hernandez argues that the State violated *Brady* by failing to produce all of the information in the Sheriff's file and by not allowing her appellate counsel to review the file.   *See* 373 U.S. at 87.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   *Id.*   To prevail on a *Brady* claim, an appellant must show that the State's nondisclosure or tardy disclosure of material exculpatory evidence or evidence material to appellant's guilt or

punishment prejudiced the defense.  *Little v. State*, 991 S.W.2d 864, 867 (Tex. Crim. App. 1999).  "To show prejudice, an appellant must show a reasonable probability that the result of the proceeding would have been different had the State timely disclosed the evidence to the defense."  *Id.* at 866*.*

Because this burden is on Hernandez, who points to nothing of substance to support her allegation, the trial court did not abuse its discretion in denying relief.

The Court overrules Hernandez's thirty-first issue.

## VIII.    MOTION FOR NEW TRIAL

By issues four, nine, eighteen, nineteen, twenty-three, twenty-four, twenty-five, and twenty-seven, Hernandez attacks the trial court's denial of her motion for new trial based upon: 1) the trial court's failure to charge the jury on the requirement of voluntary conduct and related instructions; 2) the trial court's exclusion of Juror L's testimony[12]; 3) trial counsels' alleged ineffective assistance; and 4) the trial court's findings of facts and conclusions of law.   We addressed the substance of several issues earlier in Parts II and V(A).[13]

### A.    Standard of Review

We review the trial court's denial of a motion for new trial for abuse of discretion.

---

[12] We do not include the juror's name to preserve her privacy.   *See e.g.*, TEX. CODE CRIM. PROC. ANN. art. 35.29 (West, Westlaw through 2017 1st C.S.).

[13] As we analyzed in Part II, Hernandez's convictions do not violate double jeopardy.   As a result, the trial court did not abuse its discretion by denying her motion for new trial on this ground.   We overrule Hernandez's eighteenth issue.

In Part V(A), we held that the trial court was not required to charge the jury on the defensive issue of voluntary conduct absent a request from defense counsel.   Thus, the trial court did not abuse its discretion in denying Hernandez's motion for new trial on this ground.   We overrule Hernandez's nineteenth issue.

*McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012); *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). "Appellate courts view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility determinations, and presume that all reasonable fact findings in support of the ruling have been made." *Thomas*, 428 S.W.3d. at 104. "Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Webb*, 232 S.W.3d at 112.

"[T]rial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007); *see also State v. Alaniz*, No. 13-15-00554-CR, 2016 WL 6804459, at *5 (Tex. App.—Corpus Christi Nov. 10, 2016, no pet.) (mem. op., not designated for publication) (reversing the trial court's erroneous grant of a new trial for insufficient evidence).

## B.    Juror L's Testimony

By issues twenty-three, twenty-four, and twenty-five, Hernandez challenges the trial court's exclusion of the evidence related to Juror L at the motion for new trial. At the hearing on Hernandez's motion for new trial, counsel attached an affidavit by Michael Tuttle, one of Hernandez's trial attorneys. Tuttle's affidavit referenced post-trial conversations with jurors to support Hernandez's claim of harm from the absence of an instruction on voluntariness from the jury trial. The affidavit was offered as an exhibit at the hearing. The State objected to the admission of the portion of the affidavit regarding juror discussions on Rule 606 grounds. *See* TEX. R. EVID. 606. The trial court sustained

39

the objection.

Defense counsel called Juror L to testify. The State again objected on Rule 606 grounds and the trial court sustained the objection. *See id.* Defense counsel questioned the juror as part of a bill of exception. The juror testified that an instruction on voluntary act "probably" would have changed her verdict on both counts.

Rule 606 prohibits the testimony of a juror on the subject of the jury's deliberations with few exceptions.[14] *Id.* "Courts 'may not inquire as to the subjective thought processes and reactions of the jury, so jurors should continue to feel free to raise and discuss differing viewpoints without the fear of later public scrutiny.'" *Romero v. State*, 396 S.W.3d 136, 152 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (quoting *McQuarrie*, 380 S.W.3d at 153).

Defense counsel argued to the trial court that Rule 606 did not apply because he sought information regarding a hypothetical jury charge. For the juror to compare her response to the hypothetical charge, she was required to use the jury's actual discussions and deliberations to reach her opinion. As a result, defense counsel's questioning necessarily implicated the jury's actual thought processes. The trial court did not abuse its discretion by excluding this evidence at the motion for new trial hearing. We overrule Hernandez's twenty-third, twenty-fourth, and twenty-fifth issues.

---

[14] Rule 606 states:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters. . . .

TEX. R. EVID. 606 (b)(1).

**C.    The Trial Court Denied Ineffective Assistance at Motion for New Trial**

During the motion for new trial hearing, the trial court found that defense counsel were not ineffective for failing to request that the trial court charge the jury on voluntary conduct, define "act," or object to the submission of the jury charge based upon differences in the first name of the infant.   We measure counsel's performance by the standard enunciated in *Strickland v. Washington*.   466 U.S. 668 (1984); *Ex parte Garcia,* 486 S.W.3d 565, 568 (Tex. Crim. App. 2016).   "First, an applicant must demonstrate deficient performance by showing that his attorney's representation fell below an objective standard of reasonableness, as judged by prevailing professional norms."   *Garcia*, 486 S.W.3d at 568–69 (citing *Strickland*, 466 U.S. at 690).   In order to do so, an applicant must overcome the strong presumption that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 687.   "There are countless ways to provide effective assistance in any given case.   Even the best criminal defense attorneys would not defend a particular client in the same way."   *Id.* at 689.   The right to assistance of reasonably effective counsel "does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight."   *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

Second, an applicant must demonstrate prejudice by establishing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding.   *Id.* "[A] court hearing an ineffectiveness claim must consider the totality of the evidence

before the judge or jury." *Id.* at 696; *Ex parte Martinez*, 330 S.W.3d 891, 903–04 (Tex. Crim. App. 2011). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

Hernandez criticizes defense counsel for failing to request instructions on voluntary conduct, a definition of "act," and on the burden of proof for defensive issues pursuant to sections 1.07(a)(1), 203(d), and 6.01. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(1), 2.03(d), 6.01. Defense counsel tried this case on the theory that Hernandez fell twice which likely caused her baby's injuries or that her falls in combination with the delivery of the eight-pound baby caused his injuries and death. They argued that the State failed to prove that Hernandez acted with the requisite *mens rea*. Hernandez was not convicted of capital murder and was not sentenced to mandatory life imprisonment. Instead, the jury found her guilty of manslaughter and injury to a child.

Lead trial counsel Fernando Mancias had been a district judge, a prosecutor, and a criminal defense lawyer for thirty-seven years. He testified that he cut his research short after he learned that a claim of accident did not give him the right to a jury instruction, and that he was not aware of the defense of involuntary conduct until post-trial.[15]

"[T]he trial court, as the finder of fact on a motion for new trial, retains the prerogative to believe or disbelieve any evidence the probativeness of which depends on the credibility of its source" even if the evidence is uncontroverted. *Odelugo v. State*, 443 S.W.3d 131, 138 (Tex. Crim. App. 2014).

The trial court found that counsel's performance in defending Hernandez against

---

[15] Defense counsel Tuttle testified similarly on this issue.

the capital murder charge was sufficient. The trial court further explained that he did not find a reasonable probability that a jury instruction on voluntary conduct would have resulted in a different verdict. He based his decision on his observation of the trial and the jury's conviction of manslaughter rather than capital murder. *See Ex parte Martinez*, 330 S.W.3d at 903–04.

Despite their testimony at the motion for new trial, Hernandez's attorneys could have reasonably believed that accident was an appropriate defense. Counsels' alleged failures regarding jury instructions and definitions did not fall below reasonable professional assistance. Furthermore, there was substantial evidence to support Hernandez's conviction. Thus, the record before us does not persuade us that Hernandez suffered prejudice from the alleged failures of her trial counsel on these issues.

We hold that the trial court did not abuse its discretion by denying the motion for new trial on grounds ineffective assistance of counsel for failure to raise the issue of involuntary conduct and the associated definitions and instructions in the jury charge. We overrule Hernandez's issues four, nine, nineteen, and twenty-seven.

Hernandez next complains that her trial counsel provided ineffective assistance during trial by failing to object to the jury charge's omissions on count two regarding *Jose* Lionel Jimenez. As harm from counsels' omissions, she argues that a reversal for some harm when error is preserved is an easier burden to carry than egregious harm when error is not preserved. *See Arline*, 721 S.W.2d at 351.

We have reviewed the underlying issues using the *Strickland* framework. 466

U.S. at 689–90. Regarding counsel's failure to object to the omission of Jose Lionel Jimenez from the jury charge, we do not find harm. The correction of a name in the indictment during trial is permissible pursuant to article 28.10(c). TEX. PENAL CODE ANN. § 28.10(c). There was only one child, the child to whom Hernandez gave birth, who was injured and died the same day. Even if counsel's failure to object fell below reasonable standards of professional conduct (an issue we do not decide), Hernandez has not demonstrated the required prejudice. *See Ex parte Martinez*, 330 S.W.3d at 903–04.

Accordingly, we overrule eighteen through twenty-two.

## IX. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
16th day of May, 2019.

44